



COURT EXHIBIT
I
11-cr-00519

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.   11-cr-00519-WYD-01

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    PHILIP CHAOHUI HE,
    a/k/a Philip Hope,
    a/k/a Philip Chaohui,

    Defendant.

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

The United States of America, by and through Matthew T. Kirsch, Assistant United States Attorney for the District of Colorado, and the defendant, Philip Chaohui He (a/k/a Philip Hope and Philip Chaohui), personally and by counsel, Robert W. Pepin, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing, pursuant to D.C. COLO. LCrR 11.1 and Fed. R. Crim. P. 11(c)(1)(A).

### I. PLEA AGREEMENT

The defendant agrees to plead guilty to Count One of the Indictment, which charged him with a violation of 18 U.S.C. § 371, Conspiracy to Violate the Arms Export Control Act and to Smuggle Goods from the United States.

The United States Attorney's Office for the District of Colorado ("the government") agrees that:

(1) the defendant should receive full credit for acceptance of responsibility pursuant to the advisory United States Sentencing Commission, Guidelines Manual (U.S.S.G.), § 3E1.1(a) & (b) (Nov. 2011) without further application to the Court provided the defendant does nothing inconsistent with accepting responsibility; and

(2) the government will move to dismiss the remaining charges in the indictment at the time of sentencing.

The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Understanding this and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following three criteria: (1) the sentence imposed is above the maximum penalty provided in the statute of conviction, (2) the Court, after determining the otherwise applicable sentencing guideline range, either departs or varies upwardly, or (3) the Court determines that the offense level is greater than 23 and imposes a sentence based upon that offense level determination.

Except as provided above, the defendant also knowingly and voluntarily waives the right to appeal the manner in which the sentence is determined on grounds set forth in 18 U.S.C. § 3742. The defendant also knowingly and voluntarily waives his right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255. This waiver provision, however, will not prevent the defendant from seeking relief otherwise available if: (1) there is an explicitly retroactive change in the

applicable guidelines or sentencing statute, (2) there is a claim that the defendant was denied the effective assistance of counsel, or (3) there is a claim of prosecutorial misconduct. Additionally, if the government appeals the sentence imposed by the Court, the defendant is released from this waiver provision.

Both parties agree that this agreement binds only the U.S. Attorney's Office for the District of Colorado. It does not bind or otherwise prevent prosecution, civil proceedings, or administrative proceedings, initiated by any other U.S. Attorney's Office or other branch of the U.S. Department of Justice, any other federal agency, or any state or local agency.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being tendered are as follows:

*First:* the defendant unlawfully and knowingly combined, conspired, confederated and agreed with others, to commit the following offenses against the United States:

(1) To willfully export and cause to be exported, without a license for such export issued in accordance with the Arms Export Control Act ("AECA") and the International Traffic in Arms Regulations ("ITAR"), items designated as defense articles on the United States Munitions List ("USML"), in violation of 22 U.S.C. § 2778; and

(2) to fraudulently and knowingly attempt to export and send from the United States defense articles contrary to the laws and regulations of the United States and to facilitate the transportation and concealment of such defense articles prior to

3

exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, in violation of 18 U.S.C. § 554;

*Second*: one of the conspirators engaged in at least one overt act furthering the conspiracy's objective;

*Third*: the defendant knew the essential objective of the conspiracy;

*Fourth*: the defendant knowingly and voluntarily participated; and

*Fifth*: there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

Adapted from Tenth Circuit Pattern Criminal Jury Instruction § 2.19 (2011 ed.).

## III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 18 U.S.C. § 371 as charged in Count One is: not more than 60 months' imprisonment; a fine of not more than the greater of $250,000 or twice the gain or loss from the offense, or both; not more than 3 years' supervised release, and; a $100 special assessment fee.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

Because the defendant is an alien, the conviction may cause the defendant to be deported or confined indefinitely if there is no country to which the defendant may be

deported, to be denied admission to the United States in the future, and to be denied citizenship.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea[s] that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense[s] of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the government's evidence would be:

From in or about May 2011 through December 2011, in the District of Colorado and elsewhere, the defendant conspired with others in China and elsewhere to willfully attempt to export and to cause to be exported, without a license issued in accordance with the AECA and the ITAR, items designated as defense articles on the USML, that is, radiation hardened programmable read-only memory microchips and static random access memory devices, with product numbers UT28F256QLE and UT9Q512K32E-SWC. The defendant is associated with Sierra Electronic Instruments ("SEI"). SEI is a

5

registered business with the State of California and located in Oakland, California in a business suite rented by S.H.  According to information reported by the California Secretary of State, SEI employs one person, S.H., and its estimated 2010 annual sales were $110,000.  SEI was created because an unidentified co-conspirator in the People's Republic of China told the defendant to open a company in the United States.  The defendant is a citizen and national of China and a lawful permanent resident of the United States.

In or about May 2011, the defendant arranged a purchase of over 300 integrated circuits with Aeroflex Microelectronic Solutions ("Aeroflex"), located in Colorado Springs, Colorado.  Aeroflex is a manufacturer of integrated circuits for the aerospace, defense, industrial, and security markets.  Integrated circuits manufactured by Aeroflex are space-qualified and radiation-hardened semiconductor products that are used in satellite communications.  The integrated circuits requested by the defendant, product numbers UT28F256QLE and UT9Q512K32E-SWC, are export-restricted defense articles under the AECA and listed on the USML.

On or about April 28, 2011, a co-conspirator caused two wire transfers totaling approximately $489,720 to be sent from a bank in Hong Kong to a personal bank account in California over which the defendant and S.H. had signatory authority.  The defendant then transferred this amount to an account in the name of SEI.  On or about May 9, 2011, the defendant provided payment in full, approximately $549,654, from the SEI account at the time he placed the order with Aeroflex.  SEI did not have any capacity or expertise to itself use the Aeroflex circuits, and the defendant placed the order with the intent of unlawfully exporting the circuits to co-conspirators in China.

On or about May 17, 2011, in response to an inquiry by Aeroflex, the defendant provided Aeroflex with a document entitled "Department of State End User Certificate & Accountability Plan" which stated that SEI agrees to comply with U.S. export laws governed by the ITAR, Title 22, Code of Federal Regulations (C.F.R.), Sections 120-130. The U.S. Department of State, Directorate of Defense Trade Controls (DDTC) administers the ITAR and regulates the export of defense articles. It is the policy of the United States to deny licenses and other approvals for exports of defense articles destined for China in accordance with Title 22, C.F.R., Section 126.1(a).

On or about May 31, 2011, the defendant, in response to Aeroflex's stated concern of the possibility that SEI would export the integrated circuits outside the United States and violate the law, stated to Aeroflex representatives that he did not have any plan to export the integrated circuits. The defendant stated that the purchaser and end-user was SEI in Oakland, California and that the integrated circuits were for domestic users only.

During the period of the purchase of the integrated circuits, the defendant corresponded frequently, both through telephone calls and e-mail communication, with unknown and unidentified co-conspirators. The corresponding telephone calls were to phone numbers originating in China. The e-mail communications involved addresses linked to Chinese internet service providers.

On or about July 28, 2011, the defendant received the first of two shipments of integrated circuits from Aeroflex in Colorado to the SEI office located in Oakland, California. The first shipment consisted of approximately 112 integrated circuits, part number UT28F256QLE (Aeroflex item number 5962R9689110VXC) which were listed

as a defense article on the USML and restricted for export from the United States. The shipment was signed for and received by S.H. at the SEI office.

During the first week of September, 2011, the defendant traveled to Tijuana in the Republic of Mexico with the integrated circuits from the first Aeroflex shipment stowed in a backpack. The defendant previously removed the integrated circuits from the original packaging configuration which included a sterile protective layer to eliminate exposure to the environment. While in Mexico the defendant participated in a pre-arranged meeting with a co-conspirator. At the meeting, the defendant provided the 112 integrated circuits he had purchased from Aeroflex to the co-conspirator. After passing off the integrated circuits, the defendant went to the airport in Tijuana, Mexico, and boarded a flight to Shanghai, China. While in China, he met with an unidentified co-conspirator who promised him future rewards, including 25,000 RMB (approximately $3,800), for his efforts.

On or about October 6, 2011, the defendant received the second shipment of integrated circuits from Aeroflex. The order consisted of approximately 200 integrated circuits, part number UT9Q512K32E-SWC, which were listed as defense articles on the USML and restricted for export from the United States. S.H. also signed for and received this shipment.

On or about December 11, 2011, the defendant drove to the Port of Long Beach, California. The integrated circuits contained in the second Aeroflex shipment were inside the trunk of the defendant's vehicle. The 200 integrated circuits had previously been transported from the SEI Office to the residence of the defendant and S.H. in Oakland, California, where they were repackaged by the defendant and S.H., and

8

placed inside several plastic infant formula containers with blue tops. The formula containers were inside several boxes that were labeled with the name "Wang Lu" as well as additional Chinese letter markings. The containers held a total of 200 integrated circuits with the part number UT9Q512K32E-SWC printed on each.

The defendant entered a controlled access point using a Transportation Worker Identification Credential (TWIC) issued by the Transportation Security Administration. The TWIC allows for unescorted access in the Port and onto vessels. The defendant met with two men in front of a docked Shanghai Zhenhua Heavy Industry Co., Ltd. ("ZPMC") ship bearing a People's Republic of China flag. The ZPMC ship was manifested to return to China the following day. One of the men that the defendant met with, L.Z., possessed a People's Republic of China passport and is affiliated with ZPMC. The second man, J.Y., is an individual with whom the defendant had communicated with previously, including the night before. The defendant was taken into custody by federal agents of the U.S. Department of Homeland Security's Homeland Security Investigations after meeting these two men. During a post-arrest call with S.H., the defendant told her that he might not be able to come home for several months and maybe two years or more. The defendant apologized to his wife, and told her that the crime he had committed was very serious. He instructed his wife not to come down to Los Angeles to see him, but to stay in Oakland and take care of their children. He further instructed her to sell one of the houses if she needed money. The defendant told his wife he had brought shame on the family.

9

## VI.   ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

   A.   The base guideline is §2X1.1, with a base offense level of 26. This is computed with reference to §2M5.2(a)(1).

   B.   There are no applicable specific offense characteristics.

   C.   There are no victim-related, role-in-offense, obstruction, or multiple- count adjustments.

   D.   The adjusted offense level therefore would be 26.

   E.   The defendant should receive a 3-level reduction for acceptance of responsibility. §3E1.1(a) & (b). The resulting offense level therefore would be 23.

   F.   The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be I.

G. The career offender/criminal livelihood/armed career criminal adjustments would not apply.

H. The advisory guideline range resulting from these calculations is 46-57 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 46 months (bottom of Category I) to 115 months (top of Category VI). The guideline range would not exceed, in any case, the 60-month statutory maximum applicable to the count of conviction.

I. Pursuant to guideline § 5E1.2, assuming the estimated offense level 23 above, the fine range for this offense would be $10,000 to $100,000, plus applicable interest and penalties.

J. Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least 1 year but not more than 3 years.

The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties

regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.  ENTIRE AGREEMENT

This document states the parties' entire agreement.  There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied.  In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: __8/29/2013__    _____
PHILIP CHAOHUI HE
Defendant

Date: __8-29-13__    _____
ROBERT W. PEPIN
Attorney for Defendant

Date: __9/3/2013__    _____
MATTHEW T. KIRSCH
Assistant U.S. Attorney

12